# IN THE COURT OF APPEALS OF IOWA

No. 19-1303
Filed November 27, 2019

**IN THE INTEREST OF W.L.,**
**Minor Child,**

**A.E., Mother,**
        Appellant.
_____

Appeal from the Iowa District Court for Linn County, Barbara H. Liesveld, District Associate Judge.

A mother appeals the modification of the permanency goal in child-in-need-of-assistance proceedings. **AFFIRMED.**

Deborah M. Skelton, Walford, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Julie F. Trachta of Linn County Advocate, Inc., Cedar Rapids, attorney and guardian ad litem for minor child.

Considered by Doyle, P.J., and Tabor and Schumacher, JJ.

**SCHUMACHER, Judge.**

A mother appeals the modification of the permanency goal in child-in-need-of-assistance (CINA) proceedings. The juvenile court did not specifically rule on the mother's request for additional time prior to the permanency hearing, but the court extended the time originally scheduled for the hearing and we conclude the court's decision did not result in injustice to the mother. We conclude the modification of the permanency goal to remain in the father's care rather than reunification with the mother was in the child's best interests. We affirm the decision of the juvenile court.

**I.      Background Facts & Proceedings**

A.E., mother, and J.E., father, are the parents of W.L., born in 2016. A bridge order gave the parents joint legal custody, with the mother having physical care of the child. Earlier CINA proceedings involving the child closed on March 3, 2018. After this, concerns arose about the condition of the mother's home and reports she was caring for the child while intoxicated. A worker from the Iowa Department of Human Services (DHS) went to the home on June 19 to check on the child and found the mother was intoxicated. The child was removed from the mother's care and placed with the father.

A new CINA petition was filed. A CINA adjudicatory order was filed on August 6, pursuant to Iowa Code section 232.2(6)(c)(2) and (n) (2018). The dispositional order, filed on October 2, provided, "The permanency goal in this case is return home to mother."

The mother attended a substance-abuse treatment program. She also saw a therapist for mental-health problems. The mother did not follow through with the

expectations of the treatment program and was unsuccessfully discharged on October 19. She then began participating in an outpatient program. The mother admitted she relapsed twice with alcohol use after entering the outpatient program. She missed some of the drug tests requested by DHS. The mother attended NA/AA meetings.

On February 7, 2019, in a review order, the court directed that the issue of permanency would be addressed at the next review hearing, which was scheduled for July 16. The court scheduled fifteen minutes for the hearing. The order provided, "If any party is requesting additional hearing time, then it is counsel's responsibility to file a motion requesting reassignment **prior** to the scheduled time. *Failure to do so shall result in the time being limited to the amount of time scheduled in this order.*"

The mother admitted drinking alcohol on April 15. She was not consistent in meeting with her outpatient substance abuse counselor. The mother also revealed she was dating an eighteen-year-old man, S.F., who had been charged with second-degree sexual assault of a child. The mother did not have stable housing and was living in a homeless shelter for a period of time. A DHS report filed on July 10 recommended the permanency goal be changed to custody with the father. The guardian ad litem (GAL) agreed with the DHS recommendation.

At the beginning of the permanency hearing, held on July 16, the juvenile court noted its previous order "indicate[d] that if additional time is needed, it needed to be requested prior to today's hearing." The court stated it "intend[ed] to proceed today." Counsel for the mother stated:

I will just point out that we were not aware really of what the recommendation was going to be. The Department's report was filed on July 10. Today is July 16. I mean, we really did not have a great deal of time to request additional time for this hearing, and I would renew that request again today that we at least have a couple of hours to—to put on some evidence. But if the Court is inclined to deny that, then, yes, mom still wants to take the stand.

The court did not specifically rule on the mother's request for additional time but said, "Call your witness."

The mother testified she was living with some friends. She was wearing a patch and stated she was participating in drug testing. The mother also testified she was participating in mental health counseling. She stated she was still dating S.F. and it was her plan that he would never be around the child. The mother stated the child could not be returned to her care at that time and asked for an additional six months to work on reunification. No other witnesses were called. The hearing lasted one hour and thirty-one minutes, from 9:14 a.m. to 10:45 a.m.

The juvenile court determined the permanency goal should be changed from reunification with the mother to remaining in the father's care. The court found, the mother "will need to demonstrate consistency in maintaining her sobriety and overall stability in order to progress toward reunification and progress beyond supervised visits." The court found:

> With regard to changing the permanency goal from reunification with the child's mother to remaining in the father's home, the court finds, over mother's objection, that said change is in the child's best interests. Based on a review of the file and the statements of the parties, the Court finds that the child needs a secure and permanent placement and that it is clear from the record that the child's mother is unable to provide for his needs at this time. Services have been offered to the mother in an attempt to correct the situation that led to the child's removal from the mother's care and further, the Court finds that the child cannot be returned to the mother's home at this time. The Court finds, based on the evidence presented and a review of

the court file, that there is convincing evidence to show that termination of the parent-child relationship is not in the best interests of the child. The child is placed with his father.

The mother appeals the juvenile court's decision.

## II.     Standard of Review

Our review of CINA proceedings is de novo. *In re L.H.*, 904 N.W.2d 145, 149 (Iowa 2017). "[T]he State bears the burden of proving its allegations by clear and convincing evidence." *Id.* "'Clear and convincing evidence' means there are no serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000) (citation omitted). Our primary concern is the best interests of the child. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014).

## III.    Continuance

The mother claims the juvenile court should have granted her oral motion for a continuance made at the permanency hearing. She states she was requesting two hours of hearing time and the hearing could have been rescheduled relatively quickly to accommodate her request for additional time. The mother asserts "[s]he was denied her right to fully address and refute the allegations which the juvenile court relied upon in its ruling to grant a change in the permanency goal."

"We review a motion for continuance under an abuse of discretion standard and will only reverse if injustice will result to the party desiring the continuance." *In re C.W.*, 554 N.W.2d 279, 281 (Iowa Ct. App. 1996). "Denial of a motion to continue must be unreasonable under the circumstances before we will reverse." *Id.*

We first note the juvenile court never directly denied the mother's request for additional time beyond the fifteen minutes originally scheduled for the permanency hearing.[1] Although the court did not say it was granting the mother's request for additional time, the hearing lasted one hour and thirty-one minutes, rather than fifteen minutes. The transcript does not show the mother was unable to present all of the evidence she wanted to present. The court asked the mother's counsel if there was further evidence and was told, "No, your Honor." There was no indication the court foreclosed the mother from presenting additional evidence. Furthermore, in her petition on appeal the mother does not state what additional evidence she would have wanted to present. We conclude the court's decision to proceed with the permanency hearing on July 16 did not result in injustice to the mother.

### IV.     Best Interests

The mother contends it was not in the child's best interests to change the permanency goal for the child from reunification with her to remaining in the father's care. She points to the GAL's report of July 15, 2019, which stated:

> [The mother] is very consistent in attending her visits and has a strong bond with [the child]. He is always excited to see her and she is very attentive and nurturing to him during their time together. She appears to understand where he is at developmentally and has age appropriate expectations for him. [The mother] is receptive to suggestions [and] open to any available parenting support. She is very affectionate with [the child] and has an obvious bond with him.

---

[1] Although there are concerns about whether the mother preserved error on her claims because the juvenile court did not enter a ruling on her request for additional time, we bypass these concerns under the circumstances in this case.

The mother states that in light of her strong bond with the child, the court should not have modified the permanency goal.

"The best interests of the child control the court's decision" in a permanency order. *In re N.M.*, 528 N.W.2d 94, 96 (Iowa 1995). Also, in the modification of a permanency order, we look solely at the best interests of the child. *See In re A.S.T.*, 508 N.W.2d 735, 737 (Iowa Ct. App. 1993).

We conclude the modification of the permanency goal for W.L. to remain in the father's care rather than reunification with the mother is in the child's best interests. *See In re T.I.*, No. 18-0921, 2018 WL 4361064, at *3 (Iowa Ct. App. Sept. 12, 2018). Although the GAL commended the mother for her interaction with the child, the GAL was "in agreement that the permanency goal in this case should be modified to reflect a goal for [the child] to remain in his father's home." The child was doing very well in the father's care. The mother continued to struggle with sobriety, her mental health, and stability in housing. In addition, the mother continued her relationship with S.F., despite the charges against him for sexual assault of a child.

We affirm the decision of the juvenile court.

**AFFIRMED.**